THE ATTORNEY GENERAL
OF TEXAS
AUSTIN 11, TEXAS



PRICE DANIEL
ATTORNEY GENERAL

March 7, 1952

Hon. Elmer McVey
County Attorney
Freestone County
Fairfield, Texas

Dear Sir:

Opinion No. V-1420

Re: Legality of "Appreciation
Day," a retail trade pro-
motion enterprise, under
submitted facts.

     You have requested the opinion of this office
concerning the legality, under the Texas anti-lottery
laws, of a retail sales promotion enterprise called
"Appreciation Day."

     According to the information contained in the
descriptive circulars submitted with your request, the
plan operates through local merchants who contribute to
a central fund called the "Community Treasure Chest."
These merchants distribute "Treasure Chest Coupons," each
of which is marked in denominations ranging from 5% to 50%.
The coupons are given to customers with each purchase, and
they are punched so as to indicate denomination, according
to the amount of the purchase. With a purchase worth from
25¢ to 99¢, a customer may receive a 5% coupon. The per-
centage denomination indicated on the coupon is increased
according to the value of the purchase, up to a maximum
of 50%, which requires a purchase of $25.00 or more. The
coupons are signed and placed in a box in each store, and
these in turn are placed in a general container from which
the winner is drawn on weekly "Appreciation Days." The
holder of the winning coupon is awarded the percentage of
the "Treasure Chest" fund which is indicated on his coupon.

     The submitted facts reflect that although the
coupons are distributed primarily upon the basis of pur-
chases from the participating firms, a number of coupons
are also made available to non-patrons.

     Section 47 of Article III of the Constitution of
Texas reads as follows:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."

Article 654, Vernon's Penal Code, the Texas anti-lottery statute, provides:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any ticket or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

There is no Texas statute which defines a lottery, but the courts have consistently adopted the following definition: A lottery is a scheme for the distribution of prizes by lot or chance among persons who have paid, or who have agreed to pay, a valuable consideration for the opportunity to win these awards. City of Wink v. Griffith Amusement Co., 129 Tex. 40, 110 S.W.2d 695 (1936); 54 C.J.S. 843, Lotteries, Sec. 1.; 28 Tex. Jur. 409, 410, Lotteries, Sec. 2. Thus it is apparent that every lottery consists of three essential elements, as follows: (1) prize; (2) chance; and (3) consideration.

The elements of prize and chance are obviously present in the fact situation which you present. Cash prizes are awarded weekly on the basis of a simple drawing. The only question for our determination, then, is whether a consideration is to be paid for the privilege of competing for the prizes.

There are many authorities, both in Texas and in other jurisdictions, which deal with the question of consideration in lotteries. No uniform rule is followed by the courts of other states, and their decisions are in

conflict.[1] Since the holding in each case depends to a large extent upon the facts of the particular situation before the court, we should briefly examine the facts of some of the leading Texas decisions.

In Smith v. State, 136 Tex. Crim. 611, 127 S.W.2d 297 (1939), the Court of Criminal Appeals considered a promotion plan known as "Noah's Ark." There the merchants paid license fees to a promoter for the privilege of participating in the program. The promoter distributed cards to the merchants, who in turn gave them to their customers in exchange for box tops and other evidences of purchases made at their respective stores. Provision was also made for the distribution of cards to those who did not make purchases at the participating establishments. These cards entitled their holders to chances for a prize. The Court held this plan to be a lottery. The license fees paid by the merchants constituted consideration moving indirectly from the contestants to the promotor, the Court reasoned, and the merchants received their consideration in the form of advertising and increased patronage.

In Featherstone v. Independent Service Station Association, 10 S.W.2d 124 (Tex. Civ. App. 1928), a group of service station operators distributed chances on an automobile among their customers. A number of tickets were also given to persons who made no purchases. It was held that the purchases constituted the consideration furnished by the customers for the chance of securing the prize, therefore the plan was a lottery. The fact that some of the chances were given to non-purchasers was held not to change the legal effect of the scheme as a whole. In this connection, the Court, at page 127, said:

---

1
    See, for example, State v. Fox Kansas Theater Co., 62 P.2d 929 (Kans.Sup. 1936); Maughs v. Porter, 161 S.E. 242 (Va. Sup. 1931); State v. Danz, 250 P. 37 (Wash. Sup. 1926). But see: State v. Hundling, 264 N.W. 608 (Iowa Sup. 1936); Williams Furniture Co. v. McComb Chamber of Commerce, 112 So. 579 (Miss. Sup. 1927); Yellowstone Kit v. State, 7 So. 338 (Ala. Sup. 1890).

". . . While dealers, under the new plan,
distributed tickets to noncustomers as well as
to customers, it seems that the scheme was to
distribute tickets, in the main to customers,
as the evidence discloses that only a few, neg-
ligible in number, were given to persons other
than customers. That the giving of tickets,
and the drawings and distribution of prizes,
were inducements to patronage and unquestiona-
bly lured customers, is shown from the very
satisfactory business results that followed.
Patronage thus induced was the consideration
that passed from the ticket holder for the chance
received, in that the price paid, whatever it
was, the amount being immaterial, constituted the
aggregate price for the merchandise or service
and the ticket that represented a chance to win
the prize; in other words, for one undivided
price both were purchased, the merchandise, or
service, and ticket, the ticket being as much
bought as though priced separately. . . . ."

Various "Bank Nite" contests held by motion pic-
ture theaters have been considered by the Texas courts and
almost without exception these plans have been held to be
lotteries, despite the fact that both patrons and non-patrons
of the theaters were allowed to participate. The distribu-
tion of "free" chances was considered but a subterfuge which
would not have the effect of legalizing an otherwise illegal
scheme. City of Wink v. Griffith Amusement Co., 129 Tex. 40,
100 S.W.2d 695 (1936); Cole v. State, 133 Tex. Crim. 548, 112
S.W.2d 725 (1938); Robb & Rowley, United, v. State, 127 S.W.
2d 221 (Tex. Civ. App. 1939); State v. Robb & Rowley, United,
118 S.W.2d 917 (Tex. Civ. App. 1938);

In only one case, Griffith Amusement Co. v. Morgan,
98 S.W.2d 844 (Tex. Civ. App. 1936) was "Bank Nite" held
legal. This decision, however, was based upon facts which
are entirely different from those you present and cannot be
considered controlling here.

Thus it is evident that in Texas the purchase of
merchandise constitutes the consideration which is neces-
sary in a lottery where the purchase entitles the purchaser
to a chance at the prize. The element of consideration is
not removed merely because the merchant himself does not
donate the awards, but together with the others makes a con-
tribution to a central fund from which the prizes are

distributed. And if the chances are distributed upon the basis of purchases, the fact that "free" chances are also given away does not change the legal effect of the scheme.

These principles have not been overturned by the recent decision in Brice v. State, 242 S.W.2d 433 (Tex. Crim. 1951). There, none of the chances for the awards were distributed on the basis of purchases from the donor. The general public was invited to register for the contest, and apparently no favoritism was shown customers. The court held, in effect, that the element of consideration was not added by mere prospect of increased patronage. Previous opinions of this office are in accord with this result. See Att'y Gen. Op. V-167 (1947). See also Att'y Gen. Op. O-2309 (1940).

In the past this office has been called upon to consider the legality of a number of promotion plans based upon the lottery principle. In Attorney General's Opinion O-2843 (1940) the plan involved was identical with that involved here. The facts involved in that opinion reflect:

"The merchants of Cleburne want official ruling regarding a trades day plan called 'Appreciation Day.' The plan operates by merchants who pay to a common fund called Appreciation Day. These merchants give coupons called 'Treasure Chest' coupons, which coupons contain markings from 5 to 50%. After purchases are made in these participating firms the customer is given a coupon which is punched from any denomination from the 5 to 50%. The custom to be generally followed that a customer who purchases from 25¢ to 99¢ in a participating store is given a 5% punched coupon; a purchase of $1.00 to $1.99, a 10% coupon; a purchase of $2.00 to $2.99, a 20% coupon; a $3.00 to $3.99, a 30% coupon, a $4.00 to $4.99, a 40% coupon, and a purchase of $5.00 to $10.00, a 50% coupon.

"The customer then signs his or her name and address on the back of the coupon, drops it in a box. On 'Drawing' day the tickets or coupons are placed in a general container from which is drawn a winning ticket. The person whose name is drawn is awarded the 5, 10, 20, 30, 40, and 50% of the trades day fund money depending on the percentage of the coupon which is drawn."

In holding this plan to be a lottery in violation of Article 654, V.P.C., it was said:

"This department has on numerous occasions passed on the question of whether or not various mercantile advertising schemes constitute a lottery, and without exception has so branded them when the elements of chance, prize and consideration have been found to be present.

". . . .

"For the reasons set forth in Opinions Nos. 0-1174, 0-2286 and 0-2563, and under the authorities there cited, it is our opinion and you are respectfully advised that the mercantile advertising scheme described in your letter, 'Appreciation Day,' constitutes a lottery as is condemned by Article 654 of the Penal Code of Texas."

More recently, a basically similar plan known as "Bonanza" was held to be a lottery. Att'y Gen. Op. V-238 (1947). We believe these opinions control the problem before us.

In the "Appreciation Day" plan, as described in your request, it appears that a substantial portion of the chances for awards are to be distributed upon the basis of purchases from the merchants who participate in the plan, and the size of the award as to such chances depends upon the value of the purchase. This constitutes a valuable consideration moving from the contestants who make purchases to the donor of the prize and, under the authorities cited above, that element is not removed by the distribution of a number of "free" chances on request. It is our opinion, therefore, that the "Appreciation Day" plan outlined in your request constitutes a lottery prohibited by Article 654, Vernon's Penal Code.

## SUMMARY

A retail sales promotion plan, known as "Appreciation Day" wherein prizes are distributed on the basis of a drawing of coupons given to store patrons with purchases of merchandise and service, is a lottery and prohibited by Article 654, V.P.C.

APPROVED:

Ned McDaniel
State Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

CBG/rt

Yours very truly,

PRICE DANIEL
Attorney General

By *Calvin B. Garwood Jr.*
Calvin B. Garwood, Jr.
Assistant